UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Julie A. Su,<br><br>                             Petitioner,<br><br>          -v-<br><br>Pamper Our Parents, Inc. and Dorothy Leonard,<br><br>                             Respondents. | 2:23-mc-03225<br>(NJC) |

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, District Judge:

Before the Court is a Petition filed by Julie A. Su, the Acting Secretary of the United States Department of Labor ("Petitioner" or the "Acting Secretary" and "DOL"), seeking an order compelling Pamper Our Parents, Inc. and its owner, Dorothy Leonard ("Respondents") to comply with an administrative subpoena *deuces tecum* ("the Subpoena"). (Pet., ECF No. 1.) The Petition asserts that on December 20, 2022, the Regional Administrator of the DOL's Wage and Hour Division ("WHD") issued the Subpoena in connection with its investigation concerning Respondents' compliance with the Fair Labor Standards Act ("FSLA"). (*Id.* ¶¶ 1, 3–4.) The Acting Secretary alleges that Respondents have failed to produce all records required by the Subpoena by the return date of January 30, 2023, and filed this miscellaneous action on November 17, 2023 to compel Respondents' full compliance. (*Id.* ¶¶ 11–13.) In support of the Petition, the Secretary filed a Memorandum of Law and the Declarations of Catarino Rodriguez, a WHD investigator, and Omar Saleem, an attorney in the DOL's New York Regional Office of the Solicitor. (Pet'rs' Mem. Law, ECF No. 2; Rodriguez Decl., ECF No. 3; and Saleem Decl.,

ECF No. 4.) The Petition requests that the Court order full compliance with the Subpoena within ten days and toll the applicable statute of limitations from January 30, 2023—the Subpoena's return date with which Respondents failed to comply—until a future date on which Petitioner will inform the Court that Respondents have fully complied. (*Id.* at 6.) Respondents filed an Affirmation in Partial Opposition to the Secretary's Petition admitting Respondents' failure to fully comply with the Subpoena due to Ms. Leonard's health condition and requesting that any Court order permit Respondents thirty days to comply with the Subpoena. (Resp'ts' Opp'n ¶¶ 7–11, ECF No. 8). Petitioner filed a Reply, stating that "assum[ing] good faith in [Respondents'] representations" regarding Ms. Leonard's heath conditions, Petitioner "would agree to a rolling production to be completed within 30 days." (Pet'r's Reply at 2, n.1, ECF No. 9.)

For the reasons set forth below, the Secretary's Petition is granted in part. Respondents shall comply with the Subpoena within thirty (30) days of this Order. Further, the statute of limitations is tolled *nunc pro tunc* from January 30, 2023 through April 17, 2023 and from November 17, 2023 until the date on which the Secretary notifies the Court that Respondents have provided complete responses to the Subpoena.

## BACKGROUND

Respondent Pamper Our Parents, Inc. ("Pamper") is a New York corporation that provides geriatric home health care services throughout New York City and Long Island. (Rodriguez Decl. ¶ 4.) Respondent Dorothy Leonard ("Leonard") is the owner of Pamper. (Pet. at 1; Resp'ts' Opp'n ¶ 7.) According to the Petitioner, around one hundred people work for Pamper. (*See* Rodriguez Decl. ¶ 4.)

In August 2022, the Long Island District Office of WHD began investigating the wage and hours practices of Pamper to determine whether the company was violating the FLSA by

misclassifying employees as independent contractors and, in so doing, failed to pay FLSA overtime wages owed since October 10, 2019. (Rodriguez Decl. ¶ 5; Pet. ¶ 3).

On September 8, 2022, WHD issued a request for records, known as a "72 Hour Notice," to Respondents, seeking "payroll, time, corporate, sales, and tax records." (Rodriguez Decl. ¶ 7.) After several unsuccessful attempts at service, WHD Investigator Catarino Rodriguez spoke by phone with Respondents' counsel, William Roché, who agreed to accept service by email on Respondents behalf. (Pet. ¶ 6.) WHD granted Respondents an extension of time to respond to the 72 Hour Notice, and on October 5, 2022, Respondents submitted a response, which included W-9 tax forms, but not the requested 1099 tax forms. (Rodriguez Decl. ¶¶ 11–12.)

WHD issued the Subpoena at issue in this case on December 20, 2022, and served Respondents on December 28, 2022. (Pet. ¶¶ 8–9; Rodriguez Decl. ¶¶ 14–15.) The Subpoena required the production of ten types of information, including, as relevant in this Petition:

> [D]ocuments reflecting: the names and full contact information, job titles, and job descriptions and/or duties of all current and former employees and/or independent contractors (Item 1); the hours worked and/or work schedules, including timecards, timesheets, and sign-in sheets, for all current and former employees and/or independent contractors (Item 6); and invoices, documents reflecting determination and/or negotiation of pay rate, procedures employees and/or independents contractors follow to obtain payment (Item 7).

(Pet. ¶ 9.)

The initial return date on the Subpoena was January 9, 2023, but WHD granted Respondents a thirty-day extension due to Ms. Leonard's hospitalization at the end of December. (Rodriguez Decl. ¶¶ 16–17.) On January 20, 2023, WHD granted Respondents' a second extension of time to respond to the Subpoena—until January 30, 2023—given that the hospital had not discharged Ms. Leonard until January 19, 2023. (*Id.* ¶ 18).

3

On January 26, 2023, Respondents' counsel Roché emailed the WHD a partial response to the Subpoena, providing some documents and stating that other records or information identified in the Subpoena did not exist. (*Id.* ¶ 19.) On February 2, 2023, the WHD emailed Roché a list of the deficiencies in Pamper's response to the Subpoena. (*Id.* ¶ 20.) On February 10, 2023, the WHD notified Respondents by email that it had not received any response, and on February 14, 2023, Roché replied stating that he was no longer in possession of any of the documents listed in the deficiency email. (*Id.* ¶ 21.)

On March 20, 2023, Roché sent the WHD two emails: the first enclosed two Adobe PDF documents titled "2020 1099s and 2021 1099s[,]" and the second provided employee records with "spreadsheet documents including contact information and copies of 1099-misc forms." (*Id.* ¶ 23.). In the later email, Roché stated that Pamper does not have phone numbers for the employees, only email addresses. (*Id.*) On April 10, 2023, the New York Regional Office of the Solicitor sent a letter to Respondent by email seeking compliance with the Subpoena by April 17, 2023, and did not receive any response (Saleem Decl. ¶ 4). On November 17, 2023, the Secretary filed the instant action to enforce the Subpoena. (*See* Pet.) To date, Respondents have not produced information responsive to three of the items sought in the Subpoena: documents providing information about current and former employees ("Item 1"); documents reflecting hours worked and/or work schedules ("Item 6"); and documents reflecting how each employee and independent contractor was paid ("Item 7"). (Rodriguez Decl. ¶¶ 24–27.) The DOL has not otherwise gained possession of these documents. (*Id.* ¶ 28.)

Respondents do not dispute the facts set forth in Petitioner's filings, except that Respondents dispute Rodriguez's description of the Pamper's personnel at issue in the WHD's investigation as "Home Health Aids"—arguing instead that the workers are "Companions"

4

which "differ from Home Health Aids" in that, among other things, Companions "do not administer medication or provide medical assistance." (*Compare* Resp'ts' Opp'n ¶¶ 3–4 *with* Rodriguez Decl. ¶ 5.) Roché concedes that Respondents have failed to comply with the Subpoena, but states that Ms. Leonard, the sole owner and operator of Respondent Pamper, has been in "extremely poor heath" for the past three to four years, "with frequent bouts of pneumonia and Covid-19." (Resp'ts' Opp'n ¶ 7.) Roché states that Ms. Leonard "eventually had to have half a lung removed and even flatlined several times and had to be resuscitated[,]" and that Ms. Leonard experienced a "worsening of her pulmonary distress" during the past year, which interfered with her ability to communicate with counsel for months. (*Id.* ¶¶ 7–8.). Roché affirms in his Declaration that Ms. Leonard has "actually sounded like herself" for the past three weeks, "but she is subject to relapse." (*Id.* ¶ 9). Ms. Leonard informed counsel on December 27, 2023 that "she will gather the requested documents and transmit them to [him] as soon as possible." (*Id.* ¶ 10.)

## LEGAL STANDARD

The FLSA was enacted in order to correct and eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . ." 29 U.S.C. § 202(a). To advance that purpose, the Act authorizes the DOL to:

> investigate and gather data regarding the wages, hours, and other conditions and practices of employment in any industry subject to this chapter, and . . . enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this chapter, or which may aid in the enforcement of the provisions of [the FLSA].

5

*Id.* § 211(a).

As part of the DOL's authority to investigate FLSA violations, the DOL has the power to issue subpoenas requiring "attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation." 15 U.S.C. § 49; *see also* 29 U.S.C. § 209 ("For the purpose of any hearing or investigation provided for in [the FLSA], the provisions of [15 U.S.C. § 49] . . . are made applicable to the jurisdiction, powers, and duties of the Administrator [and] the Secretary of Labor . . . ."). If a party fails to comply with a DOL subpoena, the agency "may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence." 15 U.S.C. § 49; *see also Donovan v. Mehlenbacher*, 652 F.2d 228, 230 (2d Cir. 1981) ("The Department of Labor clearly has the power to issue subpoenas in the course of an investigation conducted under statutory authority, and to have those subpoenas enforced by federal courts." (citing *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186 (1946))).

"[T]he district court's role in a proceeding to enforce an administrative subpoena is extremely limited." *E.E.O.C. v. United Parcel Serv., Inc.*, 587 F.3d 136, 139 (2d Cir. 2009) (quotation marks omitted). The agency seeking to enforce the subpoena need only show:

> [1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within [the agency's] possession, and [4] that the administrative steps required . . . have been followed.

*Id.*

An agency may establish that these requirements have been met through "[a]n affidavit from a governmental official . . . ." *In re McCane*, 44 F.3d 1127, 1136 (2d Cir. 1995); *see also United States v. Navarro*, 304 F. App'x 908, 910 (2d Cir. 2008). If an agency seeking

enforcement of a subpoena meets these requirements, the "subpoena . . . will be enforced unless the party opposing enforcement demonstrates that the subpoena is unreasonable, or issued in bad faith or for other improper purposes, or that compliance would be *unnecessarily* burdensome." *N.L.R.B. v. Am. Med. Response, Inc.*, 438 F.3d 188, 192–93 (2d Cir. 2006) (quotation marks omitted) (emphasis in original).

**DISCUSSION**

The Secretary seeks an order (1) compelling Respondents to fully comply with the Subpoena within ten days of the Court's order or suffer contempt and (2) tolling the applicable statute of limitations from the date Respondents failed to comply—January 30, 2023—through a future date on which the Secretary informs the Court that Respondents have produced all responsive documents. (Pet. at 6.) After reviewing the record in full, the Court finds that the WHD's Subpoena is enforceable, that there is no applicable defense to its enforcement, that providing Respondent thirty days to comply is reasonable, and that a partial tolling of the statute of limitations is warranted.

**I.      Enforceability of the Subpoena**

The Secretary has established a *prima facie* case for the enforcement of its Subpoena and Respondents have not met their burden to establish any defenses to the Subpoena's enforcement, although Respondents have set forth sufficient reason to grant them additional time to comply with the Subpoena. Accordingly, the Secretary's Motion for an order compelling Respondents to comply with the Subpoena is granted except that the Court will permit Respondents thirty days to come into full compliance.

A. Petitioner's *Prima Facie* Showing

The Secretary has established a *prima facie* case that this Subpoena is enforceable by demonstrating, through affidavits of government officials, that the investigation at issue has a legitimate purpose, that the Subpoena seeks relevant information that is not within the DOL's possession, and that the Subpoena followed proper administrative procedures. *See United Parcel Serv., Inc.*, 587 F.3d at 139. Respondents do not contest that Petitioner has met this showing.[1]

First, the Secretary has established that the instant Subpoena was part of an investigation with a legitimate purpose—to determine whether Pamper has been violating the FSLA. *See* 29 U.S.C. § 211(a) (empowering the DOL to investigate a company's "wages, hours, and other conditions and practices of employment . . . " to uncover violations of the FLSA or otherwise "aid in [its] enforcement . . ."). Indeed, in a sworn Declaration, WHD Investigator Rodriguez attests that the WHD issued the Subpoena in this case as part of "an investigation into whether Pamper's pay and employment practices are in compliance with the FLSA." (Rodriguez Decl. ¶ 5.) Specifically, the WHD sought to determine whether Pamper has been mischaracterizing employees as "independent contractors" and thus failing to pay them overtime pay and to afford other protections under Section 207 of the FLSA, 29 U.S.C. § 207. (Rodriguez Decl. ¶ 5.)

Second, the Subpoena seeks information relevant to the investigation's legitimate purpose. Courts "defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." *In re McVane*, 44 F.3d at 1135 (quotation marks omitted). Here, the

---

[1] In its Reply, Petitioner asks the Court to find that Respondents have conceded the enforcement of the Subpoena and the need for equitable tolling, addressed below. (Pet'r's Reply at 1.) The Court does not need to reach the issue of whether Respondents conceded or waived any issues, as Petitioner has established its *prima facie* showing for enforcement of the subpoena and Respondents have not met their burden to raise any applicable defenses.

8

Secretary seeks an order compelling the production of three groups of documents: documents providing information about current and former employees ("Item 1"); documents reflecting hours worked and/or work schedules ("Item 6"); and documents reflecting payments to employees and how each employee and independent contractor was paid ("Item 7"). (Rodriguez Decl. ¶¶ 24–27.) The WHD's determination that these documents and information are relevant to its investigation is "not obviously wrong." *In re McVane*, 44 F.3d at 1135. Indeed, all three types of information could potentially aid the WHD in its investigation. The employees' job descriptions and duties would help the WHD determine whether Pamper's workers have been properly characterized as "independent contractors" and the workers' contact information could aid the investigation because the WHD could subpoena the testimony of Pamper's current and former employees to gain further information about their hours worked, wages paid, and job descriptions.[2] Further, documents reflecting workers' schedules or timesheets could help the WHD determine whether workers worked over forty hours in any given week, and thus, whether those workers are entitled to FLSA overtime pay. Lastly, the documents reflecting payments to

---

[2] Courts consider a number of factors to determine whether a worker is an "independent contractor" or an "employee" under the FLSA, including:

> (1) the degree of control the employer exercises over the workers, (2) the workers' opportunity for profit or loss and their investment in the employer's business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship between the employer and employee, and (5) the extent to which the work is an integral part of the employer's business.

*Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 350 (E.D.N.Y. 2015) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059–60 (2d Cir. 1988)) (quotation marks omitted).

employees would help the WHD determine whether, if a worker was entitled to any overtime pay, Pamper paid that employee all wages owed.

Third, the Secretary has established that the information sought in Items 1, 6, and 7 of the Subpoena are not within the agency's possession. WHD Investigator Rodriguez affirmed that Respondents have not produced the documents sought in Items 6 and 7 and have not produced the information sought in Item 1 aside from Pamper's "workers' names, home addresses, and some email addresses." (Rodriguez Decl. ¶¶ 24–27.) Rodriguez further affirms that these documents "are not in the Department's possession." (*Id.* ¶ 28.)

Lastly, the DOL followed the administrative steps required in this issuance of this Subpoena. On December 20, 2022, the Subpoena was properly signed and issued by a regional administrator of the WHD. Rodriguez Decl. ¶ 14; *see* 75 Fed. Reg. 55.352 (Sept. 10, 2010) (delegating the DOL's authority and assigning responsibility of issuing subpoenas under 29 U.S.C. § 209 to the regional administrators of the WHD). Further, Respondent's counsel consented to service by email and on December 28, 2022, the WHD served the Subpoena on counsel via email and fax. (Pet. ¶ 6; *see also* Rodriguez Decl. ¶ 15). Thus, the WHD complied with the procedural requirements in issuing the instant Subpoena.

B. <u>Defenses to Enforcement of the Subpoena</u>

Respondents have failed to establish any defense to the Subpoena's enforcement. Once an agency seeking to enforce an agency establishes a *prima facie* case that the subpoena is enforceable, the burden shifts to the party seeking to avoid enforcement to establish that "the subpoena is unreasonable, or issued in bad faith or for other improper purposes, or that compliance would be *unnecessarily* burdensome." *Am. Med. Response, Inc.*, 438 F.3d at 192–93 (quotation marks omitted) (emphasis in original). Respondents do not make any suggestion that

the Subpoena is unreasonable or that it issued for any improper purpose. (*See generally,* Resp'ts' Opp'n.) Respondents' counsel provides information about Ms. Leonard's health conditions in the past several years, and specifically in the past year, to provide context for the Court regarding Respondents' failure to fully comply with Subpoena. (*See id.* ¶¶ 7–10.) Counsel affirms that Respondent Leonard is the sole owner and operator of Pamper and that in the past several years she has suffered from "extremely poor health," including, among other things, "pneumonia and Covid-19[,]" hospitalizations, and the ultimate removal of a lung. (*Id.* ¶¶ 7–8). Respondents do not, however, establish—or even argue—that Respondent Leonard's health conditions would make enforcement of the Subpoena "unnecessarily burdensome." *Am. Med. Response, Inc.*, 438 F.3d at 193. Indeed, counsel affirms that Leonard has "sounded like herself" again in the past weeks and has informed counsel on December 27, 2023 that "she will gather the requested documents and transmit them to [him] as soon as possible." (*Id.* ¶¶ 9–10.) Further, while counsel states that Respondent Leonard is the sole owner and operator of Pamper, counsel does not establish that there is no one else who could aid in the production of these documents. Accordingly, Respondents have not established any defense to the Subpoena's enforcement.

C. Time Period of Order

The Court finds it reasonable to permit Respondents thirty days to comply with this Order, rather than the ten days Petitioner initially requested. The Court finds Respondents' request reasonable given counsel for Respondents' affirmations about Ms. Leonard's health. (*See* Resp'ts' Opp'n ¶ 7–10.) Further, Petitioner has no objection to the production of information in response to the Subpoena on such a timeline. (*See* Pet'r's Reply at 2.)

## II. Equitable Tolling

Petitioner has established that the doctrine of equitable tolling is appropriate in part in this case to partially toll the statute of limitations of the FLSA *nunc pro tunc* from January 30, 2023 through April 17, 2023 and again from November 17, 2023 through the date on which Respondents' fully comply with their obligations under the instant Subpoena. Courts may "extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). When determining whether to "toll the limitations period to avoid inequitable circumstances," a district court must "giv[e] due consideration to whether the plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief." *Cabrera v. Stephens,* No. 16CV3234ADSSIL, 2017 WL 4326511, at *7 (E.D.N.Y. Sept. 28, 2017) (citation and quotation marks omitted). The statute of limitations under the FLSA is two years for non-willful violations of the statute, and three years for any willful violation. 29 U.S.C. § 255. This Court has tolled the FLSA statute of limitations where an employer failed to comply with a WHD subpoena and where the agency established that it had acted with due diligence in attempting to investigate. *See e.g., Walsh v. Upright*, No. 22-MC-247 (NSR), 2023 WL 2207604 (S.D.N.Y. Feb. 23, 2023); *Acosta v. Fusilli at Miller Place, Inc.*, No. 18-MC-426 (DRH)(SIL), 2018 WL 4635735, at *8 (E.D.N.Y. May 7, 2018), *report and recommendation adopted*, No. 18-MC-426 (DRH)(SIL), 2018 WL 3302183 (E.D.N.Y. July 5, 2018) (tolling the FLSA statute of limitations where "Petitioner's submissions demonstrate[d] that the WHD has been reasonably diligent in conducting its investigation" and where the record

shows "Respondents[] failure[d] to provide responses to a vast majority of demands" in the Subpoena).

Here, Petitioner has demonstrated reasonable diligence in their investigation and with respect to the Subpoena at issue through April 17, 2023, but not for the period from April 18, 2023 until the filing of this action in November 17, 2023. The WHD began investigating Pamper's wage and hour practices in August 2022, and on September 8, 2022 (within one month), submitted a 72-Hour Request for Pamper's records. (Rodriguez Decl. ¶¶ 5–7.) At Respondents' request, the WHD granted Respondents a one-month extension to comply, but even then, Respondents failed to provide the requested documents. (*Id.* ¶¶ 11–12.) After attempting to obtain records without a Subpoena, the WHD issued the instant Subpoena in December 2022, with a return date in early January 2023. (*Id*. ¶ 15). At Respondents' request and due to Ms. Leonard's hospitalization, the WHD twice extended the return date. (*Id*. ¶¶ 16–18.) Even after Respondents had failed to comply by the Subpoena's extended return date of January 30, 2023, the DOL continued to attempt to obtain compliance short of a Court order enforcing the Subpoena through emails to Respondents' counsel on February 2, February 10, March 20, and April 10 of 2023. (*See* Rodriguez Decl. ¶¶ 20–21, 23; Saleem Decl. ¶ 4.) In the April 10, 2023 email, the New York Regional Office of the Solicitor requested Respondent's full compliance with the Subpoena by April 17, 2023. (Saleem Decl. ¶ 4.)

The record does not show, however, that Petitioner took steps to secure Respondents' compliance with the Subpoena between April 18, 2023—the day after Respondents' response was due—and the filing of this action on November 17, 2023. Petitioner has not shown that it followed up with Respondents when they failed to meet the April 17, 2023 deadline or why it waited seven months to file an action seeking enforcement of the Subpoena. Based on this

13

record, the Court cannot find that Petitioner acted with reasonable diligence for the period from April 18, 2023 until the filing of this action on November 17, 2023. *Compare Acosta*, 2018 WL 4635735, at *2, 7–8 (finding reasonable diligence where petitioner moved to compel enforcement of an administrative subpoena under the FLSA one month after respondents' failure to comply with that subpoena) *with Donovan v. Dist. 1199, New York Health & Hosp. Care Emps.*, 760 F.2d 440, 442 (2d Cir. 1985) ("[I]n a case where the Government delays action for months unreasonably before seeking enforcement [of an administrative subpoena], tolling the statute [of limitations] would conflict with Congress's explicit concern about promptness" under the Labor-Management Reporting and Disclosure Act of 1959).

While Respondents have provided some information to the WHD, Respondents have still not provided a significant portion of the subpoenaed documents thirteen months after the issuance of this Subpoena. Accordingly, given Petitioner's diligence during the time periods specified above and given Respondents failure to comply with substantial portions of a lawfully issued subpoena, the Court finds it appropriate to toll the applicable statute of limitations from January 30, 2023 through April 17, 2023 and from the date of filing this action on November 17, 2023 through any future date on which the Secretary notifies the Court that Respondents have provided complete responses to the Subpoena.

## CONCLUSION

For the reasons set forth above, Petitioner's Motion to Compel is granted in part. Respondents shall comply with the WHD's Subpoena in full within thirty (30) days of this Order, or by February 29, 2024. Further, the applicable statute of limitations shall be tolled *nunc pro tunc* from January 30, 2023 through April 17, 2023 and from November 17, 2023 until the date on which Respondents' fully comply with their obligations under the instant Subpoena.

Petitioner shall file a letter indicating that Respondents have fully complied with the Subpoena within two (2) days of Respondents' production of the remaining subpoenaed documents.

Dated: Central Islip, New York

January 29, 2024

                                                 /s Nusrat J. Choudhury
                                                NUSRAT J. CHOUDHURY
                                                United States District Judge